[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13134

_____

In Re: MORROW GA INVESTORS, LLC,

Debtor.

_____

PAYAM KATEBIAN,
MORTEZA KATEBIAN,

Plaintiffs-Appellants,

*versus*

TAMARA OGIER,
Chapter 11 Trustee,
1590 ADAMSON, LLC,
1590 ADAMSON DIP, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-03482-ELR

_____

Before NEWSOM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Payam Katebian and Morteza Katebian (the "Katebians") appeal the district court's dismissal of their appeal from an order of the bankruptcy court. In short, the Katebians asked the district court to vacate a bankruptcy court order approving a settlement between the estate's trustee (Tamara Ogier) and a secured creditor (1590 Adamson, LLC, and 1590 Adamson DIP, LLC), based on the Katebians' belief that the agreement overvalued the debt owed to the secured creditor. In a well-reasoned order, the district court dismissed the Katebians' appeal under the doctrine of equitable mootness. After careful review of the record, and with the benefit of oral argument, we find that the district court did not err in dismissing the Katebians' appeal. Accordingly, we **AFFIRM** the district court.

All pending motions are hereby **DENIED**.

23-13134      NEWSOM, J., Concurring in the Judgment      1

NEWSOM, Circuit Judge, concurring in the judgment:

I concur in the Court's judgment but write separately to explain why the Katebians' appeal is not equitably but rather *statutorily* moot.

**I**

In bankruptcy cases like this one, there are three "flavors" of mootness: "constitutional, equitable, and statutory." *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021) (citation modified). Most familiar is the constitutional kind, which "derives from the case-or-controversy requirement of Article III." *Id.* If a court "can no longer provide a plaintiff with effective relief, the case is usually moot." *Id.*

The other two mootness doctrines are bankruptcy-specific. Both serve to insulate some bankruptcy-court decisions from post-hoc tinkering on appeal. Equitable mootness bars certain "appeals from orders confirming plans of reorganization" and also applies to "appeals that effectively seek to modify or amend a plan's provisions." *In re Hazan*, 10 F.4th 1244, 1252 (11th Cir. 2021) (citation modified). In particular, an appeal might be equitably moot if the bankruptcy court's "rulings have gone into effect and would be extremely burdensome, especially to non-parties, to undo." *Bennett v. Jefferson County*, 899 F.3d 1240, 1247 (11th Cir. 2018). In truth, to label this doctrine "mootness" is to mislabel it: "[I]n an equitably moot appeal, the relief sought is the opposite of moot—the consequences of granting it would be so great that they are deemed inequitable." *Id.* (citation modified); *accord Matter of UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (highlighting the "big difference

2          NEWSOM, J., Concurring in the Judgment       23-13134

between inability to alter the outcome (real mootness) and unwillingness to alter the outcome ('equitable mootness')").

Then, there's statutory mootness. This doctrine hails straight from the Bankruptcy Code—which forbids a reviewing court from reversing or modifying a bankruptcy court's authorization of a sale of estate property to someone who "purchased . . . such property in good faith" unless the sale was "stayed pending appeal." 11 U.S.C. § 363(m). Statutory mootness kicks in if two factors are present: "(1) the failure of the appellant to obtain a stay of the sale order and (2) a sale transacted with an entity that purchased or leased [the] property in good faith." *Stanford*, 17 F.4th at 123 (citation modified). If both conditions are met, § 363(m) bars all efforts to reverse or modify a bankruptcy-court-approved sale of estate property. *Id.* at 122. In other words, "once a sale is approved by the bankruptcy court and consummated by the parties, the bankruptcy court's authorization of the sale cannot be effectively altered on appeal." *In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987). Unlike its constitutional and equitable cousins, "[s]tatutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute." *Stanford*, 17 F.4th at 122.

## II

Against this doctrinal backdrop, here's a brief factual primer: Morrow GA Investors filed for bankruptcy after defaulting on a loan that it had obtained from 1590 Adamson in order to buy an office building. The Katebians were guarantors of Morrow's loan.

23-13134    NEWSOM, J., Concurring in the Judgment    3

Having "obligate[d] [themselves] to pay [Morrow's] debt," the Katebians gained a subrogation right against Morrow, giving them a financial stake in Morrow's bankruptcy estate. *See* Ga. Code §§ 10-7-1, 10-7-56. The bankruptcy estate's primary asset was the building that Morrow had bought with the loan.

After some negotiations, Morrow (along with its bankruptcy trustee, Tamara Ogier) reached a settlement with Adamson. Pursuant to the deal, Adamson agreed to reduce its secured claim to $3,999,000.00, and Ogier agreed to start marketing the building for a minimum price equal to Adamson's secured claim. When no other buyers came forward, Adamson bought the building itself via credit bid, which allows a lender "to bid for the property using the debt it is owed to offset the purchase price." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 642 (2012); *see also* 11 U.S.C. § 363(k). The bankruptcy court blessed the transaction pursuant to 11 U.S.C. § 363(b)—a provision that gives bankruptcy courts the power to approve the sale of estate property outside the confines of a reorganization plan. Because Adamson's secured claim and the building's price were equal in value, the sale completely offset Adamson's secured claim. In layman's terms, Adamson got the building, and Morrow got free of its debt to Adamson.

The Katebians weren't happy with the deal, so they appealed the bankruptcy-court order that had approved the settlement. They contended, most importantly, that the bankruptcy court had *over*-valued Adamson's secured claim. The Katebians

4                NEWSOM, J., Concurring in the Judgment        23-13134

didn't move to stay the bankruptcy proceedings, so the credit-bid sale between Morrow and Adamson closed while the appeal was pending before the district court.

The district court dismissed the Katebians' appeal as equitably moot. First and foremost, the district court emphasized that the Katebians had "not obtain[ed]—or even request[ed]—a stay of the underlying bankruptcy proceedings pending their appeal of the Settlement Order." Order at 18, Dkt. No. 24. Second, the district court maintained that it was too late to unwind the settlement because "others ha[d] taken action in reliance on . . . Adamson's claim valuation since the Settlement Order's issuance." *Id.* at 19. After all, the district court reasoned, the secured claim and minimum price were integral parts of the deal that ultimately led to Adamson buying the building. Revising the terms of that sale on the back end would amount to "unscrambl[ing] the egg." *Id.* at 21 (quoting *Bennett*, 899 F.3d at 1252). Third and finally, the district court opined that the Katebians' "requested relief [wa]s incongruent with fundamental notions of equity and fairness." *Id.* at 22. As the district court saw things, the Katebians were essentially trying to "unilaterally impose new terms" on Adamson and then require Adamson to "pay the unanticipated, non-negotiable difference"—an effort that the district court deemed unfair and thus barred by equitable-mootness principles. *Id.* at 24.[1]

---

[1] The district court also suspected that statutory mootness was in play. In a lengthy footnote, the court questioned the Katebians' assertion "that they only wish[ed] to revise Appellee Adamson's claim . . . rather than 'overturn

## III

The district court was right to dismiss the Katebians' appeal, and the majority is right to affirm the district court's dismissal, but I would have done so on *statutory*-mootness grounds. To my mind, statutory mootness is a better fit here than equitable mootness—both as a matter of our own caselaw and in light of the doctrines' distinct functions.

We have deployed equitable mootness principally to dismiss "appeals from orders confirming plans of reorganization [and] appeals that effectively seek to modify or amend a plan's provisions." *Hazan*, 10 F.4th at 1252 (citation modified); *see also* 7 Collier on Bankruptcy ¶ 1129.09 ("Traditionally, the equitable mootness doctrine has been applied only to appeals from orders confirming plans of reorganization in chapter 11."). Accordingly, the cases in which we have played the equitable-mootness card have chiefly involved eleventh-hour challenges to some core aspect of a reorganization plan. *See, e.g.*, *Hazan*, 10 F.4th at 1253 (appeal was equitably moot because the reorganization "[p]lan ha[d] been substantially

---

[Appellee] Adamson's bid or approval of the sale.'" Order at 23 n.10 (citation modified). The district court surmised that the Katebians' appeal instead went to the very heart of the building's sale—mainly because the minimum and ultimate sale price were pegged to the secured claim whose value the Katebians were disputing on appeal. *See id.* As the district court recognized, § 363(m) rendered it powerless to reverse or modify the sale itself. *Id.* In this light, the court complained that the Katebians' "inconsistent actions and arguments" had "created a legal thicket that they fail to clarify, further bolstering the [c]ourt's conclusion that equitable considerations weigh against granting the relief they seek." *Id.*

6        NEWSOM, J., Concurring in the Judgment     23-13134

consummated"); *Bennett*, 899 F.3d at 1252 (appeal was equitably moot because "the County and others ha[d] taken significant and largely irreversible steps in reliance on the unstayed plan confirmed by the bankruptcy court"); *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992) (appeal from bankruptcy court's plan-confirmation order was equitably moot because "the reorganization plan ha[d] been so substantially consummated that effective relief [wa]s no longer available" (citation modified)); *Miami Ctr., Ltd. P'ship v. Bank of N.Y.*, 838 F.2d 1547, 1556–57 (11th Cir. 1988) (appeal seeking to have property revalued and sale price adjusted was equitably moot because it would have "str[uck] at the sale to the bank and the re-organization plan as a whole").[2]

---

[2] *Miami Center* seems the closest analogue from the equitable-mootness world. The appellants in that case brought numerous challenges to a reorganization plan that the bankruptcy court had confirmed, one of which looked similar to the Katebians' appeal. Specifically, the *Miami Center* appellants maintained that they "d[id] not seek to overturn" the sale that the reorganization plan had approved but instead just wanted "the property revalued to a higher figure and the sale price adjusted accordingly." 838 F.2d at 1555. We affirmed the district court's dismissal based on equitable mootness because what the appellants were seeking would have "str[uck] at the sale to the bank and the reorganization plan as a whole." *Id.* at 1556. As we emphasized, "the sale of the primary asset does not stand independently and apart from the plan of arrangement, but rather the many intricate and involved transactions were contemplated by the plan of arrangement and stand solely upon the order confirming the plan of arrangement." *Id.* (citation modified). At first glance, this case looks quite similar to the Katebians' appeal. But unlike our case here, *Miami Center* involved a reorganization plan. As explained above the line, this distinction makes the Katebians' appeal a better candidate for statutory mootness.

23-13134    NEWSOM, J., Concurring in the Judgment    7

Confining equitable mootness to the reorganization-plan setting makes sense when we consider the doctrine's self-avowed purpose. By its own terms, equitable mootness aims to prevent the debtor's reorganization from getting bogged down in endless appeals—thereby protecting both the debtor and third-party creditors whose interests are bound up with the plan. *See, e.g.*, *Hazan*, 10 F.4th at 1252 (stating that courts should consider "whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant"). As we explained in *Bennett*, equitable mootness serves to "reject bankruptcy appeals if rulings have gone into effect and would be extremely burdensome, especially to non-parties, to undo." 899 F.3d at 1247; *accord, e.g.*, *In re Cont'l Airlines*, 91 F.3d 553, 559–60 (3d Cir. 1996) (en banc) (observing that equitable mootness is "a vehicle whereby the court can prevent substantial harm to numerous parties," in particular where "the reorganization involves intricate transactions" or "where outside investors have relied on the confirmation of the plan").

Some of our sister circuits have heeded this narrowly framed purpose and declined to extend equitable mootness to contexts like ours. In *Matter of Sneed Shipbuilding*, 916 F.3d 405 (5th Cir. 2019), for example, the Fifth Circuit confronted "an appeal of a bankruptcy court's approval of a sale of key assets [pursuant to § 363], including a settlement necessary to facilitate the transaction." *Id.* at 407. The trustee in that case "invoke[d] both equitable and statutory mootness," but the Fifth Circuit opted for the statutory variety. *Id.* As the court explained, "[e]quitable mootness is aimed at

limiting review of complex plans whose implementation has substantial secondary effects." *Id.* at 409.  The doctrine was thus a mismatch for an appeal that "only affect[ed] a few third parties, all of whom participated in the bankruptcy court." *Id.*  Statutory mootness, by contrast, was right on the money—and so the court invoked it in dismissing the case.  *Id.* at 410; *accord In re ICL Holding Co., Inc.*, 802 F.3d 547, 553–55 (3d Cir. 2015) (declining to apply equitable mootness to an appeal from a settlement approval and § 363(b) sale, ruling instead that the appeal implicated statutory mootness); *see also In re Kramer*, 71 F.4th 428, 449 (6th Cir. 2023) ("[T]his court has remained committed to applying [equitable mootness] narrowly—only [to] appeals of confirmation orders of reorganization plans and inquiring into the complexity of the plan.").[3]

There are also macro-level reasons for preferring statutory mootness here.  Most importantly, equitable mootness is a judge-made doctrine that exists uncomfortably alongside our "virtually

---

[3] It's true that some unpublished circuit decisions (including one of our own) have deployed equitable mootness to dismiss appeals challenging bankruptcy-related settlements.  But none of the decisions I've seen have involved § 363 sales of bankruptcy-estate property, so statutory mootness couldn't have been on the table in any of those cases.  *See Myers v. Offit Kurman, P.A.*, 773 F. App'x 161, 162 (4th Cir. 2019) (appeal from settlement to distribute funds); *Stokes v. Gardner*, 483 F. App'x 345, 346 (9th Cir. 2012) (appeal from settlement to transfer property and distribute funds); *Ordonez v. ABM Aviation, Inc.*, 787 F. App'x 533, 535 (10th Cir. 2019) (appeal from settlement of debtor's employment-discrimination claims); *In re JMC Memphis, LLC*, 655 F. App'x 802, 803–04 (11th Cir. 2016) (appeal from settlement to release claims under insurance policy).

23-13134      NEWSOM, J., Concurring in the Judgment      9

unflagging obligation . . . to exercise [our] jurisdiction." *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Kramer*, 71 F.4th at 452 (declining "to expand broadly [the] already questionable doctrine" of equitable mootness given "the presumption that we should hear and decide on the merits cases properly before [us]" (citation modified)); *Cont'l Airlines*, 91 F.3d at 567 (Alito, J., dissenting) (criticizing the en banc majority's decision to adopt a broad version of "the curious doctrine of 'equitable mootness,' which . . . permit[s] federal [courts] to refuse to entertain the merits of live bankruptcy appeals over which they indisputably possess statutory jurisdiction and in which they can plainly provide relief"); *Turner v. Jordan*, 117 F.4th 1289, 1306 (11th Cir. 2024) (Newsom, J., dissenting) ("[F]ederal courts 'have no more right to decline to exercise the jurisdiction which is given, than to usurp that which is not given . . . .'" (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821))). Given our general duty to decide the merits of cases within our constitutionally authorized and congressionally prescribed jurisdiction, I would resist further extending equitable mootness's judge-empowering exception.

## IV

There's no need to apply an expanded equitable-mootness rule in this case because the doctrine's statutory cousin is right on the mark. While equitable mootness safeguards third parties, the debtor, and the bankruptcy plan itself, statutory mootness's focus is more targeted. Section 363(m) principally protects only two parties: the seller of bankruptcy-estate property and, most importantly, the good-faith purchaser. Section 363(m) insulates bona

fide purchases of estate property by stripping courts of the ability to tinker with or unwind those transactions on appeal. *See* 11 U.S.C. § 363(m).[4]

Statutory mootness is a perfect fit here. The Katebians' appeal doesn't implicate any reorganization plan—the traditional field of the equitable-mootness doctrine's application. Instead, this case stems from the bankruptcy court's approval of a settlement and § 363(b) sale. Although it's not inconceivable that the Katebians' appeal could have downstream effects on third parties, the key players seem relatively few and close at hand. The problem with the Katebians' appeal isn't that it would have a wide blast radius but, rather, that it would upend Adamson's good-faith purchase of the office building.

Our own caselaw confirms statutory mootness's applicability here. Our recent decision in *Stanford* is effectively on point. Much like the Katebians, the appellants in that case said that they didn't want to "unwind the [§ 363(b)] sale" but, instead, simply wanted the court to "recognize that the value given by [the buyer] was illusory and order [the buyer] to pay $3.5 million in cash for the property." 17 F.4th at 125. We refused the appellants' invitation to impose "a different price," recognizing that "[t]he bankruptcy court expressly approved [the buyer's] credit bid as

---

[4] That's not to say that statutory mootness doesn't advance broader policy concerns: Most notably, perhaps, the doctrine "encourage[s] parties to bid for estate property"—thereby promoting debtors' liquidity. *See Sneed*, 916 F.3d at 409.

sufficient consideration for the property." *Id.* at 126. We emphasized that "by ordering [the buyer] to pay something other than what it bid and the bankruptcy court approved, we would be undoing the sale itself, which we are powerless to do under 363(m)." *Id.*

It was much the same story more than 30 years earlier in *Charter Company*. The appellant there challenged the bankruptcy court's sale approval because he believed that the price was too low—all the while assuring the court that he wasn't attacking "the validity of the sale, but only [sought] to obtain a refund of a portion of the sale price." 829 F.2d at 1056. We held that § 363(m) barred this relief because "[o]ne cannot challenge the validity of a central element of a purchase, the sale price, without challenging the validity of the sale itself." *Id.*; *see also Sneed*, 916 F.3d at 410 (deeming statutorily moot an appeal from a settlement order that "d[id] not challenge the sale of the property but only challenge[d] the disbursement of cash to the probate estate" because "[p]aying off the probate estate was an essential feature of the sale").

Just so here. Morrow, Ogier, and Adamson came to a settlement that the bankruptcy court approved. The key terms of that deal were that Adamson would reduce its secured claim to $3,999,000.00 and that Ogier would try to sell the building at that minimum price. When no other bidders stepped up, Adamson agreed to buy the office building via a credit bid, and the bankruptcy court approved the sale under § 363(b). The Katebians didn't move to stay that sale, nor does anyone dispute the

12          NEWSOM, J., Concurring in the Judgment      23-13134

bankruptcy court's finding that Adamson was a good-faith buyer. *See Stanford*, 17 F.4th at 123.

In this appeal, the Katebians seek to reduce Adamson's secured claim, which would "create a deficit owed to the Estate" that Adamson would need to "fork over." Order at 23–24. In practice, giving the Katebians their requested relief would retroactively increase the building's sale price, forcing Adamson to pay an amount that it never agreed to. But as the district court rightly emphasized, the sale's whole structure "relied on the value of Appellee Adamson's secured claim as set in the Settlement Order." *Id*. at 20. Thus, "by ordering [Adamson] to pay something other than what it bid and the bankruptcy court approved, we would be undoing the sale itself, which we are powerless to do under 363(m)." *Stanford*, 17 F.4th at 126.

\* \* \*

The Katebians' appeal is moot indeed—but *statutorily* so. True enough, both mootness doctrines yield the same outcome here. But equitable mootness is a judicial invention that I'd prefer not to extend lest the doctrine chip away at our "virtually unflagging obligation" to decide cases that Congress has authorized us to decide. Unlike equitable mootness, statutory mootness doesn't contravene Congress's prescription—it obeys it. I would have preferred to resolve this case by cleaning up the fuzzy boundaries between the two mootness doctrines and making clear that the Katebians' appeal is statutorily moot.