963 F.2d 1490
 61 USLW 2019, 27 Collier Bankr.Cas.2d 277,
23 Bankr.Ct.Dec. 355,
Bankr. L. Rep. P 74,692
 In the Matter of SAYBROOK MANUFACTURING CO., INC., Clinton
Marine Products, Inc., Sero Holdings, Inc., the Sero
Company, a/k/a Sero of New Haven, a/k/a Ms. Sero, a/k/a
Par-Ex, a/k/a Wrecked, a/k/a Scoundrel, a/k/a Jennifer Kirk,
a/k/a C.J. Taft, Debtors.
Jeffrey SHAPIRO and Seymour SHAPIRO, Plaintiffs-Appellants,
v.
SAYBROOK MANUFACTURING COMPANY, INC., Clinton Marine
Products, Inc., Sero Holdings, Inc., the Sero Company, Mfg.
Hanover Trust, Manufacturer's Hanover Trust Company,
Manufacturer's Hanover Bank (Delaware), Union Trust Company,
an Irving Commercial Corporation, Defendants-Appellees.
 No. 91-8542.
 United States Court of Appeals,
Eleventh Circuit.
 June 25, 1992.
 
 Ward Stone, Jr., Adams & Hemingway, Macon, Ga., for plaintiffs-appellants.
 C. David Butler, Lee Brooks Rivera, Alston & Bird, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before COX, Circuit Judge, JOHNSON* and REAVLEY**, Senior Circuit Judges.
 COX, Circuit Judge:
 
 
 1
 Seymour and Jeffrey Shapiro, unsecured creditors, objected to the bankruptcy court's authorization for the Chapter 11 debtors to "cross-collateralize" their pre-petition debt with unencumbered property from the bankruptcy estate. The bankruptcy court overruled the objection and also refused to grant a stay of its order pending appeal. The Shapiros appealed to the district court, which dismissed the case as moot under section 364(e) of the Bankruptcy Code because the Shapiros had failed to obtain a stay. We conclude that this appeal is not moot and that cross-collateralization is not authorized under the Bankruptcy Code. Accordingly, we reverse and remand.
 
 I. Facts and Procedural History
 
 2
 Saybrook Manufacturing Co., Inc., and related companies (the "debtors"), initiated proceedings seeking relief under Chapter 11 of the Bankruptcy Code on December 22, 1988. On December 23, 1988, the debtors filed a motion for the use of cash collateral and for authorization to incur secured debt. The bankruptcy court entered an emergency financing order that same day. At the time the bankruptcy petition was filed, the debtors owed Manufacturers Hanover approximately $34 million. The value of the collateral for this debt, however, was less than $10 million. Pursuant to the order, Manufacturers Hanover agreed to lend the debtors an additional $3 million to facilitate their reorganization. In exchange, Manufacturers Hanover received a security interest in all of the debtors' property--both property owned prior to filing the bankruptcy petition and that which was acquired subsequently. This security interest not only protected the $3 million of post-petition credit but also secured Manufacturers Hanover's $34 million pre-petition debt.
 
 
 3
 This arrangement enhanced Manufacturers Hanover's position vis-a-vis other unsecured creditors, such as the Shapiros, in the event of liquidation. Because Manufacturers Hanover's pre-petition debt was undersecured by approximately $24 million, it originally would have shared in a pro rata distribution of the debtors' unencumbered assets along with the other unsecured creditors. Under the financing order, however, Manufacturers Hanover's pre-petition debt became fully secured by all of the debtors' assets. If the bankruptcy estate were liquidated, Manufacturers Hanover's entire debt--$34 million pre-petition and $3 million post-petition--would have to be paid in full before any funds could be distributed to the remaining unsecured creditors.
 
 
 4
 Securing pre-petition debt with pre- and post-petition collateral as part of a post-petition financing arrangement is known as cross-collateralization. The Second Circuit aptly defined cross-collateralization as follows:
 
 
 5
 [I]n return for making new loans to a debtor in possession under Chapter XI, a financing institution obtains a security interest on all assets of the debtor, both those existing at the date of the order and those created in the course of the Chapter XI proceeding, not only for the new loans, the propriety of which is not contested, but [also] for existing indebtedness to it.
 
 
 6
 Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.), 596 F.2d 1092, 1094 (2d Cir.1979).
 
 
 7
 Because the Second Circuit was the first appellate court to describe this practice in In re Texlon, it is sometimes referred to as Texlon -type cross-collateralization. Another form of cross-collateralization involves securing post-petition debt with pre-petition collateral. See, e.g., In re Antico Manufacturing Co., 31 B.R. 103, 105 (Bankr.E.D.N.Y.1983). This form of non-Texlon-type cross-collateralization is not at issue in this appeal. See Appellant's Brief at 8-9. The Shapiros challenge only the cross-collateralization of the lenders' pre-petition debt, not the propriety of collateralizing the post-petition debt. Id. at 10.
 
 
 8
 The Shapiros filed a number of objections to the bankruptcy court's order on January 13, 1989. After a hearing, the bankruptcy court overruled the objections. The Shapiros then filed a notice of appeal and a request for the bankruptcy court to stay its financing order pending appeal. The bankruptcy court denied the request for a stay on February 23, 1989.
 
 
 9
 The Shapiros subsequently moved the district court to stay the bankruptcy court's financing order pending appeal; the court denied the motion on March 7, 1989. On May 20, 1989, the district court dismissed the Shapiros' appeal as moot under 11 U.S.C. § 364(e) because the Shapiros had failed to obtain a stay of the financing order pending appeal, rejecting the argument that cross-collateralization is contrary to the Code. Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.), 127 B.R. 494 (M.D.Ga.1991). The Shapiros then appealed to this court.
 
 II. Issues on Appeal
 
 10
 1. Whether the appeal to the district court and the appeal to this court are moot under section 364(e) of the Bankruptcy Code because the Shapiros failed to obtain a stay of the bankruptcy court's financing order.
 
 
 11
 2. Whether cross-collateralization is authorized under the Bankruptcy Code.
 
 III. Contentions of the Parties
 
 12
 The lenders argue that this appeal is moot under section 364(e) of the Bankruptcy Code. That section provides that a lien or priority granted under section 364 may not be overturned unless it is stayed pending appeal. Even if this appeal were not moot, the Shapiros are not entitled to relief. Cross-collateralization is a legitimate means for debtors to obtain necessary financing and is not prohibited by the Bankruptcy Code.
 
 
 13
 The Shapiros contend that their appeal is not moot. Because cross-collateralization is not authorized under bankruptcy law, section 364(e) is inapplicable. Permitting cross-collateralization would undermine the entire structure of the Bankruptcy Code by allowing one unsecured creditor to gain priority over all other unsecured creditors simply by extending additional credit to a debtor.
 
 IV. Standard of Review
 
 14
 Conclusions of law by the bankruptcy and district courts are reviewed de novo. Equitable Life Assurance Society v. Sublett (In re Sublett), 895 F.2d 1381, 1383 (11th Cir.1990).
 
 V. Discussion
 A. Mootness
 
 15
 We begin by addressing the lenders' claim that this appeal is moot under section 364(e) of the Bankruptcy Code. Section 364(e) provides that:
 
 
 16
 The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.
 
 
 17
 11 U.S.C. § 364(e). The purpose of this provision is to encourage the extension of credit to debtors in bankruptcy by eliminating the risk that any lien securing the loan will be modified on appeal.
 
 
 18
 The lenders suggest that we assume cross-collateralization is authorized under section 364 and then conclude the Shapiros' appeal is moot under section 364(e). This is similar to the approach adopted by the Ninth Circuit in Burchinal v. Central Washington Bank (In re Adams Apple, Inc.), 829 F.2d 1484 (9th Cir.1987). That court held that cross-collateralization was "authorized" under section 364 for the purposes of section 364(e) mootness but declined to decide whether cross-collateralization was illegal per se under the Bankruptcy Code. Id. at 1488 n. 6. See also Unsecured Creditors' Committee v. First National Bank & Trust Co. (In re Ellingsen MacLean Oil Co.), 834 F.2d 599 (6th Cir.1987), cert. denied, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988).
 
 
 19
 We reject the reasoning of In re Adams Apple and In re Ellingsen because they "put the cart before the horse." By its own terms, section 364(e) is only applicable if the challenged lien or priority was authorized under section 364. See Charles J. Tabb, Lender Preference Clauses and the Destruction of Appealability and Finality: Resolving a Chapter 11 Dilemma, 50 Ohio St.L.J. 109, 116-35 (1989) (criticizing In re Adams Apple, In re Ellingsen, and the practice of shielding cross-collateralization from appellate review via mootness under section 364(e)); see also In re Ellingsen, 834 F.2d at 607 (Merritt, dissenting) (arguing that section 364(e) was not designed to prohibit creditors from challenging pre-petition matters and that "[l]enders should not be permitted to use their leverage in making emergency loans in order to insulate their prepetition claims from attack"). We cannot determine if this appeal is moot under section 364(e) until we decide the central issue in this appeal--whether cross-collateralization is authorized under section 364. Accordingly, we now turn to that question.
 
 B. Cross-Collateralization and Section 364
 
 20
 Cross-collateralization is an extremely controversial form of Chapter 11 financing. Nevertheless, the practice has been approved by several bankruptcy courts. See, e.g., In re Vanguard Diversified, Inc., 31 B.R. 364 (Bankr.E.D.N.Y.1983); In re Roblin Indus., Inc., 52 B.R. 241 (Bankr.W.D.N.Y.1985); In re Beker Indus. Corp., 58 B.R. 725 (Bankr.S.D.NY.1986). Contra In re Monach Circuit Indus., Inc., 41 B.R. 859 (Bankr.E.D.Pa.1984). Even the courts that have allowed cross-collateralization, however, were generally reluctant to do so. See McLemore v. Citizens Bank (In re Tom McCormick Enterprises, Inc.), 26 B.R. 437, 439-40 (Bankr.M.D.Tenn.1983).
 
 
 21
 In In re Vanguard, for example, the bankruptcy court noted that cross-collateralization is "a disfavored means of financing" that should only be used as a last resort. In re Vanguard, 31 B.R. at 366. In order to obtain a financing order including cross-collateralization, the court required the debtor to demonstrate (1) that its business operations would fail absent the proposed financing, (2) that it is unable to obtain alternative financing on acceptable terms, (3) that the proposed lender will not accept less preferential terms, and (4) that the proposed financing is in the general creditor body's best interest. Id. This four-part test has since been adopted by other bankruptcy courts which permit cross-collateralization. See, e.g., In re Roblin, 52 B.R. at 244-45.
 
 
 22
 The issue of whether the Bankruptcy Code authorizes cross-collateralization is a question of first impression in this court. Indeed, it is essentially a question of first impression before any court of appeals. Neither the lenders' brief nor our own research has produced a single appellate decision which either authorizes or prohibits the practice.
 
 
 23
 The lenders claim that the Sixth Circuit's decision in In re Ellingsen endorses cross-collateralization. Like In re Adams Apple, the issue in In re Ellingsen was whether section 364(e) rendered an appeal moot because the appellants failed to obtain a stay. Judge Wellford's opinion for the court notes that, while cross-collateralization is controversial, it appears to have been used and approved in the past. Therefore, "Congress would not have intended to exclude all cross-collateralization orders categorically from section 364(e)'s protection." In re Ellingsen, 834 F.2d at 602. The court concluded that the appeal was moot under section 364(e) because the bankruptcy court did not issue a stay of its cross-collateralization order. The court, however, did not hold that cross-collateralization itself was authorized under the Bankruptcy Code. In fact, Judge Nelson concurred separately to emphasize the limited scope of the court's decision, stating that he was uncertain as to whether section 364 permitted cross-collateralization. Id. at 606.
 
 
 24
 As noted above, the Ninth Circuit reached a similar conclusion in In re Adams Apple. In re Adams Apple held that the appeal was moot under section 364(e) but expressly declined to decide whether cross-collateralization was illegal per se under the Bankruptcy Code. In re Adams Apple, 829 F.2d at 1488 n. 6. The Ninth Circuit reaffirmed this holding in Transamerica Commercial Finance Corp. v. Citibank (In re Sun Runner Marine, Inc.), 945 F.2d 1089 (9th Cir.1991).
 
 
 25
 The court in Adams Apple held only that where the bankruptcy court grants cross-collateralization under § 364, post-petition credit is extended to the debtor in reliance thereon, an appeal is taken, and no stay pending appeal is sought, § 364(e) renders the appeal moot because even reversal would not affect the post-petition lender's rights. The court explicitly declined to rule whether the Bankruptcy Code authorizes cross-collateralization.
 
 
 26
 We also decline to rule whether cross-collateralization is appropriate in this case, or whether as a matter of law it is ever permissible.
 
 
 27
 Id. at 1094. See also Official Committee of Creditors v. Union Bank (In re Texas Research, Inc.), 862 F.2d 1161, 1164 (5th Cir.1989) (declining to decide whether the Bankruptcy Code prohibits cross-collateralization because, under the facts of the case, no cross-collateralization could have occurred).
 
 
 28
 The Second Circuit expressed criticism of cross-collateralization in In re Texlon. The court, however, stopped short of prohibiting the practice altogether. At issue was the bankruptcy court's ex parte financing order granting the lender a security interest in the debtor's property to secure both pre-petition and post-petition debt. The court, in an exercise of judicial restraint, concluded that:
 
 
 29
 In order to decide this case we are not obliged, however, to say that under no conceivable circumstances could "cross-collateralization" be authorized. Here it suffices to hold that ... a financing scheme so contrary to the spirit of the Bankruptcy Act should not have been granted by an ex parte order, where the bankruptcy court relies solely on representations by a debtor in possession that credit essential to the maintenance of operations is not otherwise obtainable.
 
 
 30
 In re Texlon, 596 F.2d at 1098. See also In re Monach, 41 B.R. at 862 (arguing that, if the Texlon court were faced with the merits of cross-collateralization, it would hold that the practice is forbidden). Although In re Texlon was decided under the earlier Bankruptcy Act, the court also considered whether cross-collateralization was authorized under the Bankruptcy Code. "To such limited extent as it is proper to consider the new Bankruptcy Act, which takes effect on October 1, 1979, in considering the validity of an order made in 1974, we see nothing in § 364(c) or in other provisions of that section that advances the case in favor of 'cross-collateralization.' " In re Texlon, 596 F.2d at 1098 (citations omitted).
 
 
 31
 Cross-collateralization is not specifically mentioned in the Bankruptcy Code. See, e.g., In re Beker, 58 B.R. at 741 (conceding that cross-collateralization is not expressly permitted by the Code). We conclude that cross-collateralization is inconsistent with bankruptcy law for two reasons. First, cross-collateralization is not authorized as a method of post-petition financing under section 364. Second, cross-collateralization is beyond the scope of the bankruptcy court's inherent equitable power because it is directly contrary to the fundamental priority scheme of the Bankruptcy Code. See generally Charles J. Tabb, A Critical Reappraisal of Cross-Collateralization in Bankruptcy, 60 S.Cal.L.Rev. 109 (1986).
 
 
 32
 Section 364 authorizes Chapter 11 debtors to obtain secured credit and incur secured debt as part of their reorganization. It provides, in relevant part, that:
 
 
 33
 (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt --
 
 
 34
 (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
 
 
 35
 (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
 
 
 36
 (3) secured by a junior lien on property of the estate that is subject to a lien.
 
 
 37
 (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if--
 
 
 38
 (A) the trustee is unable to obtain such credit otherwise; and
 
 
 39
 (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
 
 
 40
 (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.
 
 
 41
 11 U.S.C. § 364(c) & (d) (emphasis added). By their express terms, sections 364(c) & (d) apply only to future--i.e., post-petition--extensions of credit. They do not authorize the granting of liens to secure pre-petition loans.
 
 
 42
 The bankruptcy court for the Eastern District of Pennsylvania reached this same conclusion regarding section 364(c) in In re Monach. "[T]he terms of § 364(c) appear to limit the extent of the priority or lien to the amount of the credit obtained or debt incurred after court approval." In re Monach, 41 B.R. at 862 (emphasis in original). See also In re Ellingsen, 834 F.2d at 601 (noting that "the express language of [section 364(c) ] suggests that the priority or lien granted thereunder is limited to securing the newly incurred debt authorized by that provision"). Similarly, the bankruptcy court for the District of New Hampshire held that section 364(d) was limited to future credit or debt. "Section 364(d) speaks only of the granting of liens as security for new credit authorized by the Court." In re Tenney Village Co., 104 B.R. 562, 570 (D.N.H.1989) (emphasis added).
 
 
 43
 Given that cross-collateralization is not authorized by section 364, we now turn to the lenders' argument that bankruptcy courts may permit the practice under their general equitable power. Bankruptcy courts are indeed courts of equity, see, e.g., Young v. Higbee Co., 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945); 11 U.S.C. § 105(a), and they have the power to adjust claims to avoid injustice or unfairness. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). This equitable power, however, is not unlimited.
 
 
 44
 [T]he bankruptcy court has the ability to deviate from the rules of priority and distribution set forth in the Code in the interest of justice and equity. The Court cannot use this flexibility, however, merely to establish a ranking of priorities within priorities. Furthermore, absent the existence of some type of inequitable conduct on the part of the claimant, which results in injury to the creditors of the bankrupt or an unfair advantage to the claimant, the court cannot subordinate a claim to claims within the same class.
 
 
 45
 In re FCX, Inc., 60 B.R. 405, 409 (E.D.N.C.1986) (citations omitted).
 
 
 46
 Section 507 of the Bankruptcy Code fixes the priority order of claims and expenses against the bankruptcy estate. 11 U.S.C. § 507. Creditors within a given class are to be treated equally, and bankruptcy courts may not create their own rules of superpriority within a single class. 3 Collier on Bankruptcy § 507.02 (15th ed. 1992). Cross-collateralization, however, does exactly that. See, e.g., In re FCX, 60 B.R. at 410. As a result of this practice, post-petition lenders' unsecured pre-petition claims are given priority over all other unsecured pre-petition claims. The Ninth Circuit recognized that "[t]here is no ... applicable provision in the Bankruptcy Code authorizing the debtor to pay certain pre-petition unsecured claims in full while others remain unpaid. To do so would impermissibly violate the priority scheme of the Bankruptcy Code." In re Sun Runner, 945 F.2d at 1094 (citations omitted). See also In re Tenney Village, 104 B.R. at 570 (holding that § 364 does not authorize bankruptcy courts to change the priorities set forth in § 507.)
 
 
 47
 The Second Circuit has noted that, if cross-collateralization were initiated by the bankrupt while insolvent and shortly before filing a petition, the arrangement "would have constituted a voidable preference." In re Texlon, 596 F.2d at 1097. The fundamental nature of this practice is not changed by the fact that it is sanctioned by the bankruptcy court. We disagree with the district court's conclusion that, while cross-collateralization may violate some policies of bankruptcy law, it is consistent with the general purpose of Chapter 11 to help businesses reorganize and become profitable. In re Saybrook, 127 B.R. at 499. Rehabilitation is certainly the primary purpose of Chapter 11. This end, however, does not justify the use of any means. Cross-collateralization is directly inconsistent with the priority scheme of the Bankruptcy Code. Accordingly, the practice may not be approved by the bankruptcy court under its equitable authority.
 
 VI. Conclusion
 
 48
 Cross-collateralization is not authorized by section 364. Section 364(e), therefore, is not applicable and this appeal is not moot. Because Texlon -type cross-collateralization is not explicitly authorized by the Bankruptcy Code and is contrary to the basic priority structure of the Code, we hold that it is an impermissible means of obtaining post-petition financing. The judgment of the district court is REVERSED and the case is REMANDED for proceedings not inconsistent with this opinion.
 
 
 49
 REVERSED and REMANDED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation