[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-11652

_____

In Re: ROBERT FLETCHER STANFORD, SR.,
FRANCES SHARPLES STANFORD,

Debtors.

_____

THOMAS E. REYNOLDS,

trustee for Chapter 7 Estate of Robert F. Stanford, Sr.
and Frances S. Stanford,

Plaintiffs-Appellant,

versus

SERVISFIRST BANK,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01901-ACA

———————————

Before JORDAN, BRASHER, and JULIE CARNES, Circuit Judges.

BRASHER, Circuit Judge:

This appeal comes to us from a bankruptcy court by way of an appeal to a district court. The debtors asked the district court to overturn the bankruptcy court's order approving the sale of the debtors' real estate. The sale was finalized while the appeal was pending, and the district court dismissed the appeal as statutorily moot under 11 U.S.C. § 363(m). That section of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith." 11 U.S.C. § 363(m).

Now, the debtors have appealed to us. Although the facts are complicated and the procedural history is tangled, the question for us is relatively straightforward: in light of our inability to undo a completed sale to a good faith purchaser under Section 363(m), can we grant the debtors any relief in this appeal? We hold that the

answer is "no." Accordingly, we agree with the district court that the appeal is statutorily moot and affirm.

## I.    BACKGROUND

This appeal involves transactions in two separate Chapter 11 bankruptcy proceedings. Robert and Frances Stanford were debtors in one of those proceedings. They owned American Printing Company, which was a debtor in the other proceeding. Before the Stanfords and APC declared bankruptcy, they each had borrowed money from ServisFirst, and each served as guarantor for the other's debt. The Stanfords owed ServisFirst around $5 million for which APC was the guarantor; APC owed ServisFirst around $7.2 million, for which the Stanfords were guarantors. The Stanfords had secured their loans from ServisFirst with a piece of real property.

After the Stanfords and APC declared bankruptcy, APC sought permission from the bankruptcy court to acquire a debtor-in-possession loan from ServisFirst of up to $13.2 million. That amount would "roll up" the $12.2 million in debt that APC owed or had guaranteed and provide APC an additional $1 million of working capital. The bankruptcy court authorized the loan. At the time the loan was authorized, neither APC, the Stanfords, nor ServisFirst thought that ServisFirst's loan to APC would affect ServisFirst's lien on the Stanfords' real property.

About a month later, the Stanfords filed a motion in their bankruptcy proceeding asking the bankruptcy court to approve the

sale of that property to ServisFirst for $3.5 million. The Stanfords filed their request under 11 U.S.C. § 363(b), which provides for the sale of a bankruptcy estate's assets outside the normal course of business. The Stanfords knew that ServisFirst planned to purchase the property with a credit bid against the Stanfords' obligations to ServisFirst. The bankruptcy court held a hearing on the motion and later entered an order approving the sale of the property to ServisFirst "via a credit bid of $3.5 million" under 11 U.S.C. § 363(k). In doing so, the bankruptcy court expressly found that ServisFirst was "a good faith purchaser under Section 363(m) of the Bankruptcy Code." It also found that "the consideration provided for in the Credit Bid constitutes the highest and/or best offer" and "the consideration to be paid by [ServisFirst] under the Credit Bid exceeds the liquidation value" of the property.

It was only at this point, after final approval of the sale, that the Stanfords raised the possibility that ServisFirst's roll-up loan to APC had paid off their own debts to ServisFirst and, therefore, had eliminated ServisFirst's lien on their real property. Shortly after the bankruptcy court approved the sale, the Stanfords filed a motion to amend the sale order and to stay the sale. They argued that APC's roll-up loan had converted ServisFirst's pre-petition claims against the Stanfords and APC into post-petition administrative expense claims against APC alone. They further argued that because ServisFirst never required them to execute a guaranty of the roll-up loan obligations, they had no remaining pre-petition obligations to ServisFirst. Consequently, they argued, ServisFirst no longer

held a lien on their property and was no longer a secured creditor that could make a credit bid for that property.

ServisFirst opposed the motion, and the bankruptcy court held another hearing. At that hearing, the Stanfords and one of their unsecured creditors reiterated the arguments contained in the motion to amend. The bankruptcy court rejected their arguments for two reasons.

First, it rejected the Stanfords' arguments on their merits. It explained that after the roll-up loan, APC still owed ServisFirst the approximately $7.2 million that it had borrowed. And, instead of being a guarantor of the Stanfords' debt, the bankruptcy court held that APC was now a co-obligor on that debt. It concluded that the roll-up loan had no other effect on the Stanfords' obligations to ServisFirst—including the lien that ServisFirst held on the Stanfords' property.

Second, the bankruptcy court explained that the Stanfords were foreclosed from arguing, after final approval of the sale, that ServisFirst lacked a biddable interest in the property. The bankruptcy court noted that either the Stanfords themselves or their attorneys were present at every hearing held in the APC bankruptcy proceeding and had never raised the possibility that the roll-up loan had extinguished ServisFirst's interest in the property. It further noted that the Stanfords had instead given every indication that ServisFirst's lien on the property survived the roll-up loan and that ServisFirst's credit bid was valid. Accordingly, the bankruptcy court held that the doctrines of equitable estoppel, judicial

estoppel, and law of the case barred the Stanfords from amending the sale on the ground that ServisFirst lacked a biddable interest in the property.

The bankruptcy court therefore denied the motion to amend the sale order. It concluded that APC's roll-up loan simply "rolled up" all of APC's obligations as a borrower and as a guarantor, making APC an obligor or co-obligor on all debt owed to ServisFirst without eliminating the Stanfords' obligations to ServisFirst.

The Stanfords appealed the sale order and the order denying their motion to amend the sale order to the district court. The Stanfords also petitioned the bankruptcy court to stay the sale pending appeal. The bankruptcy court granted a stay conditioned on the posting of a $1.5 million supersedeas bond, which the Stanfords did not post. Ultimately, the Stanfords delivered an executed deed to the property to ServisFirst. The deed was duly recorded.

After consummating the sale, ServisFirst moved to dismiss the Stanfords' appeal as moot under 11 U.S.C. § 363(m). The district court granted that motion. It explained that, because the Stanfords were unable to obtain a stay or prevent the sale from being completed, it lacked authority to grant effective relief under the Bankruptcy Code, rendering the appeal moot. The Stanfords timely appealed to this Court.

## II.    STANDARD OF REVIEW

When reviewing a district court's appellate review of a bankruptcy court's decision, we apply the same standards of review as the district court. See In re Walter Energy, Inc., 911 F.3d 1121, 1135 (11th Cir. 2018). Accordingly, we review conclusions of law drawn by both the district court and the bankruptcy court de novo. We review factual findings for clear error. See id. A factual finding is clearly erroneous if the reviewing court examines the evidence and is "left with the definite and firm conviction that a mistake has been made." In re Feshbach, 974 F.3d 1320, 1328 (11th Cir. 2020).

The Stanfords argue that ServisFirst is not a good faith purchaser under the Bankruptcy Code provision governing sales of debtor assets. Whether a buyer purchases in good faith is a mixed question of fact and law. See In re Gucci, 126 F.3d 380, 390 (2d Cir. 1997). The standard of review for a mixed question depends on "whether answering it entails primarily legal or factual work." U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. At Lakeridge, LLC, 138 S. Ct. 960, 967 (2018). We review a mixed question de novo when it requires us to "expound on the law, particularly by amplifying or elaborating on a broad legal standard." Id. We review a mixed question for clear error when it requires us to "marshal and weigh evidence, make credibility judgments, and otherwise address . . . 'multifarious, fleeting, special, narrow facts that utterly resist generalization.'" Id. (quoting Pierce v. Underwood, 487 U.S. 552, 561–62 (1988)).

## III.    DISCUSSION

Before addressing the Stanfords' arguments, we begin with background on mootness in the context of bankruptcy appeals. "In bankruptcy, mootness comes in a variety of flavors: constitutional, equitable, and statutory." *In re PW, LLC*, 391 B.R. 25, 33 (9th Cir. BAP 2008). Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III. *See id.* If, during an appeal, a court finds that it can no longer provide a plaintiff with effective relief, the case is usually moot. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Equitable mootness is, as the name suggests, a doctrine of equity that moots an appeal because of (1) the effects of a reversal on third parties who have relied on a bankruptcy court's order or (2) the complexity and difficulty of unwinding a contested transaction. *See PW*, 391 B.R. at 33. If a third party has altered its position in reliance on a bankruptcy court's order or a transaction is simply too complex or difficult to unwind, an appeal may be moot as a matter of equity. *See id.* at 34.

This appeal is about statutory mootness under Section 363(m). Statutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute. *See id.* at 35; 3 Collier on Bankruptcy ¶ 363.11 (16th 2021). As relevant here, Section 363(m) precludes an appellate court from reversing or modifying a bankruptcy court's authorization of a sale of a bankruptcy estate's property to someone who "purchased . . . such property in good faith" under Section 363(b) or (c) unless the sale was "stayed pending appeal." 11 U.S.C. § 363(m). In other words, "once

a sale is approved by the bankruptcy court and consummated by the parties, the bankruptcy court's authorization of the sale cannot be effectively altered on appeal." *In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987). The language of Section 363(m) "states a flat rule governing all appeals of section 363 authorizations." *Id.* By precluding the possibility of relief, Section 363(m) statutorily "moots" appeals from authorizations under Section 363(b) or (c), unless they are stayed.

Statutory mootness under 363(m), however, is not jurisdictional. Though it provides a defense against appeals from bankruptcy court orders, "even an ironclad defense, does not defeat jurisdiction." *See Trinity 83 Dev., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599, 602 (7th Cir. 2019). Instead, even though courts may retain appellate jurisdiction over appeals from Section 363 authorizations, they are barred by the Code from affording the relief an appellant seeks. Because a judicial opinion on the propriety of the transaction would therefore be advisory-only, we consider such appeals statutorily "moot." *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

## A.    *The Stanfords' Appeal Is Covered by Section 363(m)*

We turn now to the Stanfords' arguments. The Stanfords argue that Section 363(m) does not apply to their appeal for two reasons. First, they argue that Section 363(m) shields from review only transactions specifically authorized by the Bankruptcy Code, not transactions authorized by bankruptcy courts. And they assert that

this transaction was not authorized by the Code because ServisFirst's credit bid was invalid. Second, they argue that ServisFirst was not a good faith purchaser because its purportedly invalid credit bid did not provide any value. ServisFirst responds that the district court properly applied Section 363(m) as a "flat rule" mooting any appeal of a sale that was authorized by the bankruptcy court, not stayed, and consummated. ServisFirst also argues that it bid on the property in good faith, citing the bankruptcy court's express finding to that effect. We agree with ServisFirst and hold that Section 363(m) applies to this appeal.

1. *Section 363(m) Moots Appeals from Any Sale Authorized by the Bankruptcy Court, Not Just Those Properly Authorized by the Code*

We begin our inquiry with the plain language of Section 363(m)'s text, which unambiguously supports ServisFirst's position. *See Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1211 (11th Cir. 2021). Section 363(b) and (c) provide that bankruptcy trustees and debtors-in-possession must be "authorized" by the bankruptcy court to use, sell, or lease certain property in the bankruptcy estate. *See* 11 U.S.C. §§ 363(b)–(c), 1107(a). Then, Section 363(m) moots an appeal from "an *authorization under* subsection (b) or (c) of this section." This language makes it clear that *all* "authorizations" are covered, not just those that may be *proper* under the Code. The rule's applicability is further clarified by the conditional phrase "unless such authorization . . . were stayed." This language further establishes that Section 363(m) moots appeals from any

authorization of a sale by a court, because a court order—unlike a Code provision—can be stayed.

We have adopted this interpretation of Section 363(m) before and remain bound by our precedent. In *The Charter Company*, we explained that "once a sale is approved by the bankruptcy court and consummated by the parties, the *bankruptcy court's authorization* of the sale cannot be effectively altered on appeal." *Charter*, 829 F.2d at 1056 (emphasis added). We also rejected an argument similar to the Stanfords' here, namely that "the stay requirement does not apply to a purchaser who challenges the authorization"—in other words, that Section 363(m) shields only sales *properly* authorized under the Code. *Id.* We instead held that "[t]here is nothing in the language of section 363(m) to suggest that such an exception exists" and that the language "states a flat rule governing all appeals of section 363 authorizations." *Id.*; *see also* 3 Collier on Bankruptcy ¶ 363.11 (16th 2021).

Importantly, the Stanfords do not challenge the credit bid mechanism itself—they challenge a specific transaction involving a credit bid. Accordingly, the Stanfords' reliance on *In re Saybrook Manufacturing Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992) is misplaced. Our *Saybrook* decision involved 11 U.S.C. § 364, which allows trustees to obtain additional credit on behalf of Chapter 11 debtors and contains a 363(m)-like provision mooting appeals from orders approving new loans to debtors. *See* 963 F.2d at 1495. In *Saybrook*, a creditor held pre-petition debt that was under-secured. *Id.* at 1491. To become fully secured, the creditor "cross-

collateralized" the pre-petition debt by offering the debtor a new, post-petition loan that was secured by all of the debtor's property. *Id.* Other creditors appealed on the ground that "cross-collaterali-zation" of this kind was not allowed under Section 364. *Id.* at 1492. The district court dismissed the appeal as moot. *Id.* We reversed, holding that the appeal was not moot because, rather than chal-lenging the propriety of a single transaction, the appeal challenged the propriety of cross-collateralizations generally. *Id.* at 1496. Here, the Stanfords are not challenging the propriety of credit bids gen-erally, or even credit bids using disputed liens. Accordingly, Section 363(m) applies to their appeal.

2. *The Stanfords Have Not Shown that ServisFirst Acted in Bad Faith*

Though a "flat" rule, Section 363(m)'s applicability is none-theless conditioned on the presence of two factors: (1) the failure of the appellant to obtain a stay of the sale order and (2) a sale trans-acted with "an entity that purchased or leased [the] property in good faith." Consequently, several circuits have held that Section 363(m) allows limited appellate review on the issue of whether the buyer acted in good faith. *See* James Lockhart, Construction and Application of 11 U.S.C.A. § 363(m), 51 A.L.R. Fed. 2d 471 Art. 2 § 4 (2010) (citing reported cases from the First, Second, Third, Fifth, Seventh, and Ninth Circuit Courts of Appeals holding that an ap-peal is not moot under Section 363(m) "insofar as the appeal seeks to challenge the good faith status of the purchaser or lessee"). We agree that appellate courts can assess whether a buyer acted in

20-11652                Opinion of the Court                13

good faith as part of its inquiry into whether Section 363(m) moots an appeal.[1]

For its part, the Bankruptcy Code does not define good faith. But we have defined a "good faith purchaser" as "one who buys in good faith, that is, free of any fraud or misconduct and for value and without knowledge of any adverse claim." *Mia. Ctr. Ltd. P'ship v. Bank of N.Y.*, 838 F.2d 1547, 1554 (11th Cir. 1988). Bankruptcy courts in our Circuit have defined the term in a similar manner. *See, e.g., In re TLFO, LLC*, 572 B.R. 391, 433 (Bankr. S.D. Fla. 2016) (adopting "a traditional equitable definition" of "one who purchases the assets for value, in good faith and without notice of adverse claims"); *In re Dawkins & Assocs., Inc.*, 56 B.R. 691, 692–93 (Bankr. M.D. Fla. 1986) (holding that an appeal was moot under Section 363(m) where the sale was made "to a good-faith purchaser for value"). And Collier's treatise explains that in this context "[a] good faith purchaser is 'one who buys property . . . for value, without knowledge of adverse claims.'" 3 Collier on Bankruptcy ¶ 363.11 (16th 2021) (alteration in original). Accordingly, we will use that well-established definition here.

The Stanfords assert that ServisFirst was not a good faith purchaser. They argue that the roll-up loan satisfied their obligations to ServisFirst, which in turn extinguished the lien on their property. They further contend that if their theory is correct, then

---

[1] We assume without deciding that the Stanfords preserved this argument in bankruptcy court.

ServisFirst lacked an interest with which to make a credit bid and therefore offered nothing of value in the sale. Of course, the Stanfords previously argued that ServisFirst was a "'good faith' purchaser within the meaning of section 363(m)" in their own motion to approve the sale. And the bankruptcy court found as a matter of fact that the "sale process and sale were non-collusive, fair and reasonable, conducted . . . at arm's length, and resulted in the Debtor obtaining the highest and/or best value" for their property.

We cannot say that the bankruptcy court's factual findings were clearly erroneous. There is no evidence, for example, that ServisFirst engaged in fraudulent behavior. The Stanfords do not allege, as debtors sometimes do when alleging bad faith, that ServisFirst bid a lien that never existed (e.g., that ServisFirst bid a lien to purchase Property A when the lien was on Property B). Instead, they contend that ServisFirst bid a lien that had been extinguished by its roll-up loan to APC in an attempt "to satisfy a single debt twice." But it is undisputed that ServisFirst never intended to do any such thing. It has always been ServisFirst's position that the roll-up loan did not affect its interest in the property at all—a position held by all parties until the sale was finalized.

We hold that ServisFirst's credit bid offered sufficient value to support the bankruptcy court's fact-finding, irrespective of the roll-up loan's alleged effect on ServisFirst's lien. The bankruptcy court concluded that its own order authorizing the loan had no effect on the lien. *Cf. In re FFS Data, Inc.*, 776 F.3d 1299, 1303 (11th Cir. 2015) ("Unless it clearly abused its discretion, 'a bankruptcy

court's interpretation of its own order is entitled to substantial deference.'" (quoting *In re Optical Techs., Inc.*, 425 F.3d 1294, 1302–03 (11th Cir. 2005))). But even if we view the lien as disputed, the fact that a creditor's lien is contested does not mean that it has no value. *Cf. Gowetz v. Comm'r*, 320 F.2d 874, 876 (1st Cir. 1963) ("Even a disputed claim may have a value, to which lawyers who settle cases every day may well testify, fully as measurable as the possible future amounts that may eventually accrue on an uncontested claim."). In fact, some courts have explicitly held that a disputed lien can be used to credit bid under Section 363(k). *See, e.g.*, *In re Charles St. Afr. Methodist Episcopal Church*, 510 B.R. 453, 458 (Bankr. D. Mass. 2014); *In re Mia. Gen. Hosp., Inc.*, 81 B.R. 682, 687–88 (S.D. Fla. 1988). Although we need not go nearly that far, we are confident that ServisFirst's lien in this case—which was only disputed by the Stanfords after the sale had been authorized—had value enough to support the bankruptcy court's fact-finding that ServisFirst was a good faith purchaser.

To be clear, although we reject the Stanfords' attempt to recast arguments about the insufficient value of the credit bid as arguments about ServisFirst's status as a good faith purchaser, we recognize that a bid's low value may be relevant to a good faith inquiry. Evidence that a buyer has given little value in exchange for a debtor's property does not necessarily mean there is an absence of good faith. *In re Crowder*, 314 B.R. 445, 449 (B.A.P. 10th Cir. 2004) ("a mere allegation that a sale price was not sufficient is not enough to create or preserve a § 363(m) issue for appellate

review"). But an unusually low value could be evidence of fraud or collusion, and if a seller establishes that a buyer acted fraudulently, that fraudulent conduct could establish a lack of good faith. *See* 51 A.L.R. Fed. 2d 471 (2010). But here, the Stanfords' argument is that the allegedly low value of the lien that ServisFirst offered as its bid, in and of itself, establishes a lack of good faith. For the reasons explained above, we reject that argument.

### B.    *The Stanfords' Requested Remedy Is Barred by 363(m)*

Having rejected the Stanfords' arguments that their appeal is not covered by Section 363(m), we now turn to the final question: if Section 363(m) applies, does it preclude the kind of relief that the Stanfords are seeking, thereby mooting their appeal from the bankruptcy court's order authorizing the sale? We hold that it does.

Again, Section 363(m) provides that, if the bankruptcy court authorizes a sale to a good faith purchaser and that sale is finalized, a court's reversal or modification of the authorization order on appeal will not affect the validity of the sale. *See* 11 U.S.C. § 363(m). "Because this provision prevents an appellate court from granting effective relief if a sale is not stayed, the failure to obtain a stay renders the appeal moot." *Charter*, 829 F.2d at 1056. That is exactly what has happened in this case. Here the bankruptcy court authorized the sale of the Stanfords' property under Section 363(b), declaring that "the Credit Bid in the amount of $3,500,000.00 is approved." The Stanfords failed to stay the sale, and the sale was

completed. Accordingly, we cannot undo the sale by reversing or modifying the authorization order.

The Stanfords argue that, rather than unwind the sale, we could recognize that the value given by ServisFirst was illusory and order ServisFirst to pay $3.5 million in cash for the property. We disagree. In fact, our precedent firmly forecloses this argument. In *Charter*, a buyer argued that an appellate court could order the bankruptcy estate to refund a portion of the sale price. We held that this relief, which would change the sale price after the fact, would affect the validity of the sale on appeal. We reasoned that "[o]ne cannot challenge the validity of a central element of a purchase, the sale price, without challenging the validity of the sale itself." *Charter*, 829 F.2d at 1056. Here, the positions of the parties are reversed—the seller, not the buyer, wants a different price—but the result is the same. The bankruptcy court expressly approved ServisFirst's credit bid as sufficient consideration for the property. As in *Charter*, by ordering ServisFirst to pay something other than what it bid and the bankruptcy court approved, we would be undoing the sale itself, which we are powerless to do under 363(m). Because the statute forbids us from providing a remedy, this appeal is moot.

## IV.    CONCLUSION

For the reasons stated above, we affirm the district court's decision and hold that Section 363(m) statutorily moots the Stanfords' appeal of the sale order.

18                        Opinion of the Court                    20-11652

AFFIRMED.

20-11652             JORDAN, J., Concurring                    1

JORDAN, Circuit Judge, concurring in part and concurring in the judgment.

I agree that the Stanfords are not entitled to relief in this appeal, and therefore I concur in Parts I, II, III.A.2, and III.B of the court's opinion. As to Part III.A.1, I concur in the judgment. I write separately because I do not believe we can so easily distinguish two of our precedents – *In re The Charter Company*, 829 F.2d 1054 (11th Cir. 1987), and *Matter of Saybrook Manufacturing Company, Inc.*, 963 F.2d 1490 (11th Cir. 1992) – and to express some thoughts over the use of "roll-ups" as financing mechanisms in debtor-in-possession scenarios.

★ ★ ★ ★ ★ ★ ★

As relevant here, 11 U.S.C. § 363(m) provides that "[t]he reversal or modification on appeal of an authorization . . . of a sale … of property does not affect the validity of a sale . . . under such authorization to an entity that purchased … such property in good faith . . . unless such authorization and such sale . . . were stayed pending appeal." The court cites *Charter Company*, 829 F.2d at 1056, for the proposition that § 363(m) applies to bankruptcy court authorizations even if the party who seeks to appeal is challenging the propriety of the authorization at issue. I agree that *Charter Company* controls in this case, but for a different reason. I am not sure that *any* sale which is authorized by a bankruptcy court, regardless of whether the underlying transaction violates the Bankruptcy Code, triggers statutory mootness.

The appellant in *Charter Company* was a third-party buyer who consented to the sale price and then bought the debtor's assets following a competitive bid in open court. The bankruptcy court subsequently approved the sale. After the sale had been finalized, the buyer appealed, arguing that the bankruptcy court was not authorized to direct potential buyers to engage in competitive bidding for the debtor's assets. Our opinion in *Charter Company* correctly cited the language of § 363(m) to highlight why principles of equity demand finality once a sale is approved by the bankruptcy court (and in part to deter this kind of buyer's remorse).

Though the case before us involves § 363(m), the same provision at issue in *Charter Company*, the facts here are more analogous to a case our court decided five years later. In *Saybrook Manufacturing*, 963 F.2d at 1493, we addressed the effect of 11 U.S.C. § 364(e), a provision of the Bankruptcy Code that is strikingly similar to § 363(m), but which concerns authorizations to obtain credit or incur debt rather than authorizations of sales or leases. *See* § 364(e) ("The reversal or modification on appeal of an authorization . . . to obtain credit or incur debt, or of a grant … of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith . . . unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal."). In *Saybrook Manufacturing*, the appellant was not a third-party buyer, but rather a pre-petition creditor who "in return for making new loans to a debtor in possession … obtain[ed] a security

interest on all assets of the debtor." 963 F.2d at 1491. This practice of securing pre-petition debt through a post-petition loan to the debtor is known as "cross-collateralization."

We held in *Saybrook Manufacturing* that § 364(m) does not bar an appeal of a bankruptcy court's authorization of a financing order if the claim is that the Bankruptcy Code does not permit the type of financing that has been authorized (i.e., the cross-collateralization). *See* 963 F.2d at 1493. We expressly rejected the "cart before the horse" approach embraced by other courts which, absent a stay, mooted all claims irrespective of whether or not the Code prohibited the underlying financing mechanism: "We cannot determine if this appeal is moot under [§] 364(e) until we decide the central issue in this appeal—whether cross-collateralization is authorized under [§] 364." *Id.* We concluded that cross-collateralization was not authorized by § 364 because though "rehabilitation [of a debtor] is certainly the primary purpose of Chapter 11 … [t]his end does not justify the use of any means." *Id.* at 1496.

As noted, §§ 363(m) and 364(e) share similar (and in some ways identical) language. It seems to me incongruous to say that the validity of an underlying authorized transaction *cannot* be reached on appeal under § 363(m) absent a stay (*Charter Company*), and at the same time say that the validity of an underlying authorized transaction *can* be reached on appeal absent a stay under § 364(e) (*Saybrook Manufacturing*). But, as the court points out, the Stanfords have not challenged the underlying financial transaction in this case. Unlike the appellants in *Saybrook*

*Manufacturing,* who challenged the propriety of cross-collaterali-zation, the Stanfords have not challenged the validity of the credit bid mechanism for the sale of their property. So this is not the right case in which to address the tension (or conflict) between *Charter Company* and *Saybrook Manufacturing* or to decide whether the rationale of *Saybrook Manufacturing* applies to § 363(m). On bal-ance, I'm just not sure that the two cases can be easily distin-guished.

Aside from § 363(m), it also seems to me that the Stanfords are seeking to appeal a ruling—the bankruptcy court's approval of the sale of their property to ServisFirst—which they asked for. Gen-erally speaking, parties cannot appeal an order, action, or ruling that they invited or requested. *See, e.g., Ford ex. rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1293–94 (11th Cir. 2002). The invited error doctrine applies to debtors just as it does to other litigants, *see Mach v. Abbott Co.*, 136 F.2d 7, 10 (8th Cir. 1943), and I think it prevents the Stanfords from arguing on appeal that the bankruptcy court erred in approving the sale of their property to ServisFirst. I recognize that the Stanfords sought to set aside the sale after it went through, but that attempt came too late.

★ ★ ★ ★ ★ ★ ★

Finally, some thoughts about the debtor-in-possession loan requested by APC and approved by the bankruptcy court. That "roll-up" loan, according to the bankruptcy court, took all of the primary and secondary debt and the guarantees of APC, and rolled it all up so that APC "became the primary or co-obligor with the

20-11652            JORDAN, J., Concurring            5

Stanfords on all . . . of the Stanford debt on which it had pre-petition been a guarantor, and now [it] has become co-obligor with the Stanfords." D.E. 10-61 at 15:24. But the debtor-in-possession financing agreement seems to have done more than that. First, pursuant to 11 U.S.C. § 364(c)(1), ServisFirst obtained a superpriority claim, entitling it to "priority over any and all administrative expenses" and unsecured claims in the APC case. *See* D.E. 10-13 at 9. Second, under § 364(c)(2), ServisFirst secured a lien on all of APC unencumbered property, both pre-petition and post-petition. *See id.* at 10. Third, ServisFirst took junior liens on all property pursuant to § 364(c)(3). *See id.* at 12. Fourth, the agreement expressly referred to the Industrial Lane property, and provided that the Stanfords would guarantee the loan to APC and grant liens on that property. *See id.* at Exh. A ¶ 18 § 5.

Why might this be problematic? Because in *Saybrook Manufacturing* we held that "cross-collateralization" ("[s]ecuring pre-petition debt with pre- and post-petition collateral as part of a post-petition financing arrangement") is not authorized as a financing mechanism under the Bankruptcy Code. *See* 963 F.2d at 1491–92. We explained that "cross-collateralization" is "directly contrary to the fundamental priority scheme of the Bankruptcy Code." *Id.* at 1495. In the years since *Saybrook Manufacturing,* bankruptcy attorneys have become creative and started requesting (and obtaining) "roll-ups," a formally distinct but functionally similar financing arrangement "whereby pre-petition secured claims are converted to post-petition secured claims." Daniel J. Bussel & Kenneth N.

Klee, *Recalibrating Consent in Bankruptcy*, 83 Am. Bankr. L. J. 663, 707 n. 209 (2009). *See also* 5 Norton Bankr. L. & Prac. 3d § 94:34 (Oct. 2021 Update) ("Conceptually similar to forward cross-collateralization is the practice of 'rolling-up' prepetition indebtedness into a DIP financing arrangement."); Seth Shich, *Debtors Qua Salvees: Superimposing Salvage Law Onto DIP Financing Agreements*, 90 Am. Bankr. L. J. 129, 141 (2016) ("Roll-ups, also frequently found in DIP loans, are similar in many ways to cross-collateralization clauses. In a roll-up, the DIP lender seeks to enhance the priority of its prepetition debt through extension of new loans. However, whereas cross-collateralization involves the enhancement of unsecured debt to a secured status, in a roll-up prepetition unsecured claims are paid off by the extension of new post-petition credit. In other words, a roll-up refinances a pre-petition loan through a post-petition facility, which, if approved, is accorded super-priority status.") (footnotes omitted).

According to some bankruptcy commentators, "[i]t is unclear why any court that rejects forward cross-collateralization would be more sympathetic to roll-ups, which appear to have precisely the same effect." Bussel et al*., Recalibrating Consent,* 83 Am. Bankr. L. J. at 707 n. 209. To make matters more interesting, a recent Supreme Court opinion contains dicta which seems to approve of roll-ups as a practice, at least when the "priority-violating distributions" serve "significant Code-related objectives." *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 977 (2017). All of

20-11652            JORDAN, J., Concurring                7

this is to say that the type of debtor-in-possession financing loan approved in this case is due for serious substantive review.

★ ★ ★ ★ ★ ★ ★

I join the court's opinion except as to Part III.A.1. As to that aspect of the opinion, I concur in the judgment