**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13053
Non-Argument Calendar
_____

In re: SHIRLEY WHITE-LETT,

*Debtor.*

_____

SHIRLEY WHITE-LETT,

*Plaintiff-Appellant,*

*versus*

RRA CP OPPORTUNITY TRUST 1,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-01979-WMR
_____

Before JILL PRYOR, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Shirley White-Lett, proceeding *pro se*, appeals the district court's order affirming the bankruptcy court's order dismissing her adversary proceeding complaint objecting to a proof of claim filed by RRA CP Opportunity Trust 1 ("RRA") in her Chapter 7 bankruptcy. She challenges the bankruptcy court's determination that she lacked Article III standing. After careful consideration, we affirm.

## I.

In May 2005, White-Lett took out two loans, borrowing $636,000 in the first loan and $79,500 in the second. Each loan was secured by a security deed that encumbered real property White-Lett owned. Years later, the security deed for the first loan was purportedly assigned to Bank of New York Mellon ("BONY"). And the security deed for the second loan was purportedly assigned to RRA.

In 2010, White-Lett filed a petition for Chapter 7 bankruptcy. She received a discharge in 2011, and the bankruptcy case was closed in 2012. In 2020, the bankruptcy court reopened White-Lett's bankruptcy case, reappointed a trustee, and set a deadline for the filing of proofs of claim. In the reopened bankruptcy case, BONY filed a proof of claim in the amount of $886,240.81 on the first loan. And RRA filed a proof of claim in the amount of $83,226.17 on the second loan. Both BONY and RRA asserted that their claims were secured by White-Lett's residence.

White-Lett, proceeding *pro se,* initiated adversary proceedings to object to these claims. In the adversary proceeding on

RRA's claim,[1] White-Lett asserted that she had not signed the underlying debt instrument, stating that her signature had been forged. She also challenged the validity of the assignment of the security interest to RRA. She sought a declaration that RRA had "neither a valid and enforceable debt" nor a "valid and enforceable security interest in her property." Doc. 2-2 at 29. [2]

When the bankruptcy case was reopened, the bankruptcy trustee began investigating whether the estate's assets included proceeds that White-Lett allegedly received from selling a business. The trustee estimated the value of this asset to be $80,000. After a status conference, the trustee agreed not to pursue recovery of this potential estate asset from White-Lett if she successfully disallowed both RRA's and BONY's claims against her bankruptcy estate. The bankruptcy court then gave the trustee permission to wait for the resolution of White-Lett's objections to RRA's and BONY's claims before determining whether the estate would seek to recover any assets from White-Lett.

The bankruptcy court ultimately dismissed White-Lett's complaint objecting to RRA's proof of claim. It concluded that she lacked standing under Article III of the Constitution. It explained that in Chapter 7 bankruptcy proceedings "[d]ebtors often lack Article III standing" to object to claims "because they usually do not

---

[1] The adversary proceeding on BONY's claim is not before us in this appeal. We discuss it only to the extent necessary to describe the litigation of RRA's claim.

[2] "Doc." numbers refer to the district court's docket entries.

have a pecuniary interest in the distribution of estate assets." Doc. 1-5 at 12. The bankruptcy court acknowledged that if there was "a reasonable possibility that a successful claim objection would result in a surplus" that would be returned to the debtor, then "the debtor may have a sufficient pecuniary interest to establish standing." *Id.* But the bankruptcy court concluded that there was no reasonable possibility that if White-Lett succeeded in her objection to RRA's claim then her bankruptcy estate would end up with a surplus and money would be returned to her. Based on this determination, the bankruptcy court concluded that it lacked subject-matter jurisdiction and dismissed White-Lett's complaint. White-Lett filed a motion for reconsideration, which the bankruptcy court denied.

White-Lett appealed to the district court. The district court affirmed, concluding that the bankruptcy court lacked subject matter jurisdiction.[3] It explained that RRA's proof of claim was "a

---

[3] Although the bankruptcy court concluded that White-Lett lacked standing, the district court observed that the dismissal also was appropriate based on mootness. It explained that in assessing whether White-Lett had a redressable injury the bankruptcy court had relied on factual developments, such as the trustee's agreement not to pursue the estate's claim against White-Lett if she defeated both RRA's and BONY's claims, that occurred after White-Lett filed her complaint against RRA. Because the analysis did not turn on whether White-Lett had a redressable injury at the time she filed her complaint but instead whether she continued to have a redressable injury, the court stated that the dismissal order could be understood as being based on mootness rather than standing. *See Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ("At all stages, of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the

24-13053                Opinion of the Court                5

demand against the bankruptcy estate's assets rather than [White-Lett's] personal assets." Doc. 14 at 18 n.8. It stated that RRA did "not seek to recover anything from" White-Lett but instead sought "to recover assets from the bankruptcy estate only." *Id.* at 20. The district court then considered whether it was possible, if White-Lett prevailed on her objection to RRA's claim, for the bankruptcy estate to end up with a surplus that would be distributed to her. The district court explained that White-Lett's bankruptcy estate potentially had an asset with an estimated value of $80,000. But it determined that even if White-Lett succeeded in challenging RRA's claim, her bankruptcy estate would not end up with a surplus to be distributed to her. The court first reviewed what would occur if White-Lett succeeded in defeating RRA's claim but not BONY's claim. In this circumstance, even if her bankruptcy estate ended up recovering the $80,000 asset, there would not be a surplus because the trustee would have to pay BONY's claim. Second, the court addressed what would occur if White-Lett defeated both RRA's and BONY's claims. If she defeated both claims, the trustee had agreed to abandon the estate's claim against White-Lett, which again meant that the estate would not end up with a surplus to be distributed to White-Lett. The district court thus concluded that White-Lett had no redressable injury. Because the bankruptcy

---

outset while the doctrine of mootness considers whether it exists throughout the proceedings."). As the district court explained, regardless of whether the dismissal was based on a lack of standing or on mootness, the key question was whether White-Lett had suffered an injury that could be redressed in the bankruptcy proceeding.

court lacked subject matter jurisdiction, the district court affirmed the bankruptcy court's order.

White-Lett appeals the district court's order affirming the bankruptcy court's order.

## II.

"When reviewing a district court's appellate review of a bankruptcy court's decision, we apply the same standards of review as the district court." *In re Stanford*, 17 F.4th 116, 121 (11th Cir. 2021). We review conclusions of law by the bankruptcy court and the district court *de novo*, and we review any factual findings for clear error. *Id*. We liberally construe a *pro se* litigant's pleadings. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III.

"Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (citation modified). "[T]here are three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." *Id*.

We focus here on standing. To satisfy the standing requirement, a plaintiff must show: (1) she "suffered an injury in fact"; (2) her injury "is fairly traceable to conduct of the defendant"; and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003). The requirement that a litigant establish that

she has standing "exist[s] throughout all stages of litigation." *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1233 (11th Cir. 2020) (citation modified).

Here, the bankruptcy court dismissed White-Lett's complaint against RRA because it concluded that she lacked standing. On appeal, White-Lett argues that the bankruptcy court erred in dismissing her complaint because the Bankruptcy Code contains a statutory provision that creates a cause of action allowing her to object to RRA's claim. She points to a provision in the Bankruptcy Code that permits a "party in interest" to object to a proof of claim filed by a creditor. 11 U.S.C. § 502. But as the Supreme Court has explained, the question of whether a statute creates a cause of action "does not implicate" subject matter jurisdiction or answer whether a court has "constitutional *power* to adjudicate the case." *Lexmark, Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (citation modified); *see Highland Consulting Grp. v. Minjares*, 74 F.4th 1352, 1359–60 (11th Cir. 2023) (distinguishing between the inquiries into whether a party had standing under Article III of the Constitution and whether a statute created a cause of action). White-Lett's argument that § 504 created a cause of action does not call into question the district court's determination that she had no redressable injury. And we conclude, for the reasons set forth in the district court's decision, that White-Lett did not have an injury that would be redressed by a favorable decision regarding the validity of RRA's claim. Accordingly, we affirm.

**AFFIRMED.**